UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA WALKER, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>DOUG BURGUM, et al.,<br><br>   Defendants. | Case No. 80-cv-04595-WHO<br><br>**ORDER DENYING MOTION TO ENFORCE JUDGMENT**<br><br>Re: Dkt. No. 2 |

In 1983, this court entered a Stipulated Judgment in *Table Mountain Rancheria Association, et al. v. James Watt, Secretary of the Interior, et al*, Civil No. C-80-4595-MHP[1] (hereafter, the "1983 Stipulated Judgment"), a case involving certain tribal members to whom the assets of the Table Mountain Rancheria had been distributed in 1959 (the "distributees") and the United States Secretary of the Interior, among others. More than forty-one years later, individuals who say that they are members of the historic Table Mountain Band of Indians[2] (hereafter, the "individual movants") but who are unrelated to the distributees, filed a Motion for Order to Show Cause Under Rule 60(b)(6) and to Enforce the 1983 Stipulated Judgment to challenge the way in which the officials of the United States Department of the Interior and the Bureau of Indian Affairs (the "BIA") (together and hereafter, the "Government") have carried out their duties under the Stipulated Judgment.[3]

---

[1] Hereafter, I refer to this case as *Watt*.

[2] The Table Mountain Band of Indians is at various times throughout both the Motion and the *Watt* class action complaint referred to as "the Band" or "the Tribe." *See generally* Motion ("Mot.") [Dkt. No. 2].

[3] An entity known as the Table Mountain Rancheria Association ("TMRA"), the governing body of the Tribe, is also a moving party and was a plaintiff in *Watt* as well. The TMRA and individual

The Movants face two insurmountable hurdles. First, they were not parties to the 1983 Stipulated Judgment nor are they members of either class that judgment created. Second, too much time has elapsed between when the Movants reasonably should have become aware of their alleged injury and when they filed their motion (at the most, almost forty-two years, and at the very least, twenty-six years). They offer no credible reason why the statute of limitations (six years under 28 U.S.C. § 2401(a)) should be extended. The court lacks jurisdiction and the request is untimely. The motion is DENIED without leave to amend.[4]

**BACKGROUND**

In the early twentieth century, the United States government passed a series of laws that affected its relationship with the indigenous inhabitants of the state of California and their descendants. One of those laws was the Indian Appropriations Act of 1906, which permitted the Secretary of the Interior (the "Secretary") to purchase parcels of land, or "rancherias," throughout the state for use by California Indians.[5] In 1916, the United States purchased a parcel of land in Fresno County, California, from private individuals; that land became known as the Table Mountain Rancheria. *See Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1011 (9th Cir. 2007). The United States held that land in trust for the Table Mountain Band of Indians. *Id.* at 1011-12. Rancheria residents were recognized as Indians for the purposes of federal law.

Fifty years later, Congress enacted another law, the California Rancheria Act of 1958 (the "Rancheria Act"), which authorized the Secretary to dissolve the same rancherias it had authorized in 1906. The Rancheria Act aimed to terminate the federal trusteeship over forty-one (41) California rancherias. One of the rancherias marked for dissolution was the Table Mountain

---

movants are referred to herein as the "Movants."

[4] On June 20, 2025, the parties informed the court that they had agreed to submit this matter on the papers. As such, I vacated the oral argument previously set for June 25, 2025. Dkt. No. 25.

[5] Because much of the relevant legal authority from this time period used the terms "Indian" or "Indians" when referring to the people indigenous to North America, these terms will be used in a similar manner in this Order for the sake of consistency and clarity. I recognize that these terms are not used or preferred by all North American indigenous communities. The court means no disrespect through their use.

Rancheria. The Rancheria Act authorized an exchange to rancheria residents of title to rancheria assets and promised that the BIA would continue to provide essential benefits to those residents, if, in return, the rancherias voluntarily relinquished their trust status, and their residents forfeited their Indian status.

In 1959, the BIA approved a plan for the distribution of assets of the Table Mountain Rancheria to its residents pursuant to the Rancheria Act. The 1959 Distribution Plan divided the Table Mountain Rancheria into parcels, most of which were to be conveyed to individual rancheria residents (the distributees) and the rest to a legal entity that was formed for the sole purpose of receiving the remaining parcels. *See Alvarado*, 509 F.3d at 1012. The BIA approved the Distribution Plan, the Table Mountain Rancheria assets were distributed to individual rancheria residents, the rancheria lost its trust status, and its residents who received the assets lost their Indian status.[6] The distributees, as they were referred to throughout the Stipulated Judgment, were a subset of the Tribe's membership.

In 1980, the TMRA, the Tribe's governing body, the distributees, and the distributees' dependent family members brought the *Watt* class action in this court to redress wrongs that they believed were committed against them via the "premature and unlawful termination of the federal trust status of the lands and Indian status of the people of the Table Mountain Rancheria." *See Table Mountain Rancheria Association, et al. v. James Watt, Secretary of the Interior, et al.*, Civil No. C-80-4595-MHP, Dkt. No. 1 (Complaint). They sought to certify two classes:

> persons named in the distribution plan as distributees of [TMR] assets ..., or the[ir] Indian heir(s), assign(s), executor(s), administrator(s), or successor(s) in interest ... who, by reason of having been named as distributees ... were ... considered by the [federal] government ... to have lost their status as Indians under [federal law];

...

> all Indian persons, other than distributees, who were named in the [TMR] distribution plan as dependents of distributees, and who, for that reason, were ... deemed by the United States ... to have lost their status as Indians under [federal law].

---

[6] *See* Opposition/Response to Motion ("Response") [Dkt. No. 19] Ex. C (BIA, *A Plan for the Distribution of the Assets of the Table Mountain Rancheria*, 1959).

3

*Id.*

The *Watt* plaintiffs alleged that the Government had failed to inform the Rancheria residents who approved the distribution plan of the "obligations of the United States under the Rancheria Act, the relative advantages and disadvantages of accepting termination, the options available to them under the Rancheria Act and the legal consequences of exercising their options." *See id.* They further alleged that the Government "caus[ed] plaintiff dependents to be ineligible to receive federal services provided exclusively to Indians, and to enjoy other federal rights available to Indians, including such rights as having land held in trust for them." *Watt*, No. C-80-4595, Complaint; *see also Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1013 (9th Cir. 2007) (Ninth Circuit discussing the *Watt* case). They sought recission of the distribution plan and a declaration "that the purported termination of the [plaintiffs'] Indian status . . . and the trust . . . status of the lands of the Table Mountain Rancheria . . . is void . . . and that plaintiff distributees [and their dependents] have been and remain eligible to participate in all federal programs and benefits provided to Indians because of their status as Indians." *Alvarado*, 509 F.3d at 1013.

On March 28, 1983, the *Watt* parties stipulated to a settlement and judgment. *See* 1983 Stipulated Judgment ("Stip. J.") [Dkt. No. 19-2]. The 1983 Stipulated Judgment provided that the named plaintiffs

> represent the *class of persons* certified as consisting of *all persons named in the distribution plan of the Table Mountain Rancheria as distributees* of the assets of said Rancheria, or the Indian heir(s), assign(s), executor(s), administrator(s), or successor(s) in interest thereof *who,* by reason of having participated in the distribution of the assets of said Rancheria at any time have been considered by the government of the United States or any other governmental entity to have lost their status as Indians under the laws of the United States.

Stip. J. ¶ 1 (emphasis added).

The 1983 Stipulated Judgment required the Secretary of the Interior to list the Table Mountain Band of Indians as an Indian tribal entity under 25 C.F.R. Part 83.6(b) and to permit any class member or successor who received title to an asset because of the 1959 distribution to "elect to restore any such interest [to] federal trust status" by conveying it to the United States for the benefit of the Tribe. Stip. J. ¶ 4. It further required the Secretary of the Interior to restore "[t]he status of the named individual plaintiffs and class members as Indians under the laws of the

4

1  United States." *Id*. ¶ 3. Finally, it provided that plaintiffs would dismiss their damages claims
2  against the Secretary of the Interior and the United States.
3        On June 16, 1983, the court entered the 1983 Stipulated Judgment, restoring the Indian
4  status of the distributees, requiring the Secretary to list the Table Mountain Band of Indians as an
5  Indian Tribal entity pursuant to 25 C.F.R. Part 83.6(b), and providing for Table Mountain
6  Rancheria land to be taken back into trust and considered "Indian country" within the meaning of
7  18 U.S.C. § 1151.[7] On December 14, 1983, the Secretary of the Interior published a notice in the
8  Federal Register designating the "Table Mountain Rancheria" as a federally recognized "Indian
9  tribal entity" eligible to receive services from the BIA.[8] Under the 1983 Stipulated Judgment, this
10  court retained jurisdiction for one year after the date of entry of judgment, or until June 16, 1984.
11        Almost forty-two years after the 1983 Stipulated Judgment was entered and the notice
12  went out, the Movants filed the underlying motion for (1) an Order to Show Cause why the BIA
13  has allegedly failed to carry out the proper organizing of the Table Mountain Band of Indians that
14  was called for by the Stipulated Judgment and "constitutional standards," under Rule 60(b)(6) and
15  (2) to Enforce the Stipulated Judgment. *See* Mot. (filed Sept. 12, 2024). The Movants assert that
16  after the Rancheria Act's implementation but before the 1983 Stipulated Judgment was entered,
17  the Government had been treating the Table Mountain Band of Indians as an Indian tribal entity.
18  That tribal entity, the Movants say, included both individuals who were distributees and those who
19  were *not* "distributees" under the Rancheria Act.
20        Among the latter group was Gloria Walker, from whom the individual movants claim to be
21  descended and in whose succession they claim an interest. The individual movants assert that they
22  are direct lineal descendants of Gloria Walker, who is in turn a descendant of a member of the
23  Table Mountain Band of Indians recorded in the 1916 census. Walker was a member of the
24  TMRA at the time of the 1980 lawsuit but was not a named plaintiff or a member of either

---

[7] *See* Response, Ex. B.

[8] Indian Tribal Entities Recognized and Eligible to Receive Services from the U.S. BIA, 48 Fed. Reg. 56,862-02, 56,866 (Dec. 23, 1983).

distributee class identified by the 1983 Stipulated Judgment. The individual movants were themselves not plaintiffs in *Watt*, nor are they part of the distributee classes. The TMRA was a plaintiff in *Watt* but not a member of either distributee class.

The Movants assert that under paragraph four of the 1983 Stipulated Judgment, and pursuant to the Government's "implicit legal and constitutional mandates," the BIA has a duty to conduct government-to-government relations only with the "historic tribal entity," not merely the distributees and their dependents. Mot. 23-24. Instead of complying with this duty, Movants say that the BIA "insisted" that the Table Mountain Rancheria (the entity that it recognized after the 1983 Stipulated Judgment and with which it seemingly has been conducting relations since) restrict its membership to distributees and their dependent family members, excluding some individuals who prior to the 1983 Stipulated Judgment were part of the Tribe despite not being distributees or distributees' dependents, like Walker and her descendants.[9] They claim that this violates the Government's duty to recognize the "Table Mountain Band of Indians" as an Indian tribal entity pursuant to 25 C.F.R. Part 83.6(b) and to conduct relations with that historic tribe. They ask that I enforce the 1983 Stipulated Judgment against this practice.

The Movants' arguments boil down to this: According to the terms of the 1983 Stipulated Judgment, the Government should have recognized, listed, and conducted relations with the "historic tribe," meaning the Table Mountain Band of Indians, which included individuals who were not distributees or dependents of distributees. Instead, since 1983 the Government has

---

[9] The Movants clarify, in their Reply, that their claims concern tribal governance, not membership in or control of the Table Mountain Rancheria. It is well-settled that federal courts lack jurisdiction over issues concerning tribal membership. The Hon. Edward M, Chen recently denied a similar Motion to Enforce brought by a group of Chukchansi Indians, finding that the movants' request "boil[ed] down to an attempt to get this Court and the Federal Government to get into tribal affairs, which are beyond the jurisdiction of Federal Courts." *Hardwick v. USA, et al.*, 3:80-cv-04595-EMC (N.D. Cal.), Dkt. No. 24-1. Judge Chen also denied the *Hardwick* motion to enforce as untimely. Here, the Movants argue that they wish to "secure the long-overdue restoration and recognition of the Table Mountain Band of Indians." To the extent that the "separate organization of the Table Mountain Rancheria may now impair the recognition of the Table Mountain Band of Indians in strict compliance with the Stipulated Judgment," the Movants ask that I amend the judgment to "provide for recognizing the Table Mountain Band of Indians." Reply 7-8. Although I do not reach the question of whether that request is at its core a request for this court to involve itself in questions of tribal membership, the Ninth Circuit's decision in *Alvarado*, together with Judge Chen's recent decision in *Hardwick*, suggest that it is likely I lack jurisdiction over this motion for that reason as well.

allegedly been conducting relations with only distributees, their dependents, and descendants of those individuals, that is, the group the Government refers to (and listed) as the "Table Mountain Rancheria."

The Government opposes this motion on four grounds: (1) it is untimely, having been brought more than forty-one years after the Stipulated Judgment was entered and more than twenty years after the last possible statute of limitations on the Movants' claims would have run; (2) this court lacks continuing jurisdiction over the Motion, because the Movants were not parties to this case, and the BIA carried out the Stipulated Judgment's terms decades ago; (3) neither Rule 60(b)(6) of the Federal Rules of Civil Procedure nor the Administrative Procedure Act ("APA") confer this court with jurisdiction over the matters at issue in the Motion; and (4) Movants lack standing because they do not allege injuries caused by the BIA or that are remediable by any order that might issue forth from this court because the Stipulated Judgment does not call for the relief the Movants seek.

## DISCUSSION

The Movants' request suffers from at least two fatal flaws: the Motion is untimely and this court lacks jurisdiction in any event.

### A.  Timeliness

The statute of limitation for civil actions against the Government is six years.  28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").  The Motion was brought almost forty-two years after the court entered the Stipulated Judgment.  It is too late.

#### 1.     The Motion is untimely under Section 2401(a)

Section 2401(a) generally "applies to all civil actions whether legal, equitable, or mixed." *Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 365 (D.C. Cir. 1993); *but see Wilderness Soc'y v. Norton*, 434 F.3d 584, 588 (D.C. Cir. 2006) ("This court has repeatedly refused to hold that actions seeking relief under 5 U.S.C. § 706(1) to 'compel agency action unlawfully withheld or unreasonably delayed' are time-barred if initiated more than six years after

7

an agency fails to meet a statutory deadline.").[10]  "A right of action 'accrues' when the [party] has a 'complete and present cause of action,'" thus having "the right to 'file suit and obtain relief.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 809 (2024) (citation omitted). And while the statute of limitations period "is not strictly jurisdictional," the running of the statute of limitations period justifies the dismissal of a case where the party "knew or should have known" of the accrual of a claim. *Cal. Valley Miwok Tribe v. United States*, 197 F. App'x 678, 679 (9th Cir. 2006) (citation omitted).

None of the acts underlying the Movants' claims occurred within six years of filing this Motion. The Stipulated Judgment was approved on June 16, 1983. It limited the class "entitled to elect to restore any [former trust land to] federal trust status" to those persons who were named in the 1959 Distribution Plan and their descendants and directed the Government to list the Table Mountain Band of Indians as a federally recognized tribe. *See* Stip. J. ¶¶ 4, 6. The BIA circulated the judgment to the distributees and their families shortly thereafter. *See* Motion, Ex. 17 at pp. 217-218. It issued a notice in the Federal Register listing the Table Mountain Rancheria as a federally recognized Indian tribe on December 14, 1983. 48 Fed. Reg. 56,862- 02, 56,865. That notice alerted the Movants of the alleged violation in that the notice listed the Table Mountain Rancheria, not the Table Mountain Band of Indians, as the tribe.[11]

Even assuming, *arguendo*, that the circulated judgment was not enough to put the Movants on notice of the purported violations, on May 16, 1992, the Tribe amended its 1981 Constitution to change the Article III membership provision in such a way that excluded Gloria Walker and her descendants. Motion Ex. 15 (modifying membership provision so that membership was now limited to a list of named individuals and their lineal descendants with at least one quarter California Indian blood; that list did not include Gloria Walker). On October 1, 1998, BIA Sacramento Area Director Jaeger acknowledged that the BIA recognized and respected the Tribe's

---

[10] More on the 5 U.S.C. § 706(1) distinction later. *See* discussion *infra* Section A(2).

[11] This is particularly true given that the TMRA, the Tribe's governing body, was a plaintiff in the 1980 action. It was presumably immediately aware of the entry of the 1983 Stipulated Judgment, and waited over forty years to challenge the way the Government implemented it.

8

right to use the 1981 Constitution, as amended, in a letter to counsel for the Table Mountain Rancheria Tribal Council. Response, Ex. D.[12] Then, in 2000, the Tribe revised its membership clause again, to include "[a]ll persons of California Indian descent who were listed as distributees or dependent members of distributees" under the 1959 Distribution Plan. Motion Ex. 16 at p. 204. All of this means that the Movants were on notice that Gloria Walker and her descendants were excluded from tribal membership by (at the very latest) October 1, 1998, the date of the last federal action with respect to the Tribe's Constitution.[13] The Movants waited another twenty-six (26) years to file their Motion to Enforce.

### 2. 5 U.S.C. § 706(1) does not excuse the delay

The Movants argue that their lateness is excused by their invocation of 5 U.S.C. § 706(1). While courts refuse to invoke § 2401(a) to bar § 706(1) failure to act claims under the APA, the Movants do not assert a § 706(1) claim.

Section 706(1) of the APA authorizes a court with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Movants contend that this court can enforce the 1983 Stipulated Judgment despite the four decades that have elapsed since its entry because the BIA's "failure to insist on the [Movants'] participation in the formation of the Band's governance system" "unlawfully withheld or unreasonably delayed" the Government's mandated actions under the Stipulated Judgment, meaning the Movants were injured by agency action, which they say raises a federal question under 28 U.S.C. § 1331 and confers upon me the

---

[12] The letter included instructions on how to appeal the decision; no appeal was submitted. *See* Response Ex. D.

[13] As the Government points out, the Ninth Circuit has affirmed the dismissals of other California tribes' attempts to bring claims related to restoration rights as time-barred under 28 U.S.C. § 2401(a). *See Nisenan Tribe of the Nev. City Rancheria v. Jewell*, 650 F. App'x 497, 498 (9th Cir. 2016) (affirming the lower court's decision to grant the appellant tribe's Rule 60(a) motion to correct a clerical error in an 1983 Stipulation for Entry of Judgment in the *Hardwick* action *nunc pro tunc*); *Mishewal Wappo Tribe of Alexander Valley v. Zinke*, 688 F. App'x 480, 480 (9th Cir. 2017) (holding that where the federal defendants in that case had published notice of the termination of the plaintiffs' rancheria in 1961, that put the Mishewal Wappo Tribe on notice of the federal defendants' alleged breach of their fiduciary duty, triggering the six-year statute of limitations, and determining that the tribe had not shown that it diligently pursued its rights or showed extraordinary circumstances such that it would be appropriate to equitably toll the statute of limitations).

9

authority to "compel [the BIA's] action" pursuant to 5 U.S.C. § 706(1). Mot. 21-22.

The Ninth Circuit has suggested, without specifically addressing the issue, that § 2401(a) may not apply to bar untimely § 706(1) failure to act claims under the APA. *See Hells Canyon Pres. Council v. United States Forest Serv.*, 593 F.3d 923, 933 (9th Cir. 2010) (citing *Wilderness Soc'y v. Norton*, 434 F.3d 584, 588-89 (D.C. Cir. 2006) for the proposition that § 706 relief is available notwithstanding 28 U.S.C. § 2401(a), where the agency ignored a statutory deadline). Other district courts in this circuit agree. *See e.g.*, *Padres Hacia Una Vida Mejor v. Jackson*, No. 1:11-CV-1094 AWI DLB, 2012 WL 1158753, at *4 (E.D. Cal. Apr. 6, 2012) (holding that "[t]he approach of the D.C. Circuit should be followed, and that approach refuses to hold § 706(1) relief as time barred when a government agency fails to meet a statutory deadline[.]"); *Pit River Tribe v. Bureau of Land Mgmt.*, 512 F. Supp. 3d 1055, 1064 (E.D. Cal. 2021) (citing *Hells Canyon* and *Wilderness Soc'y* for the principle that the six-year statute of limitations set forth by § 2401(a) may not be applicable in § 706(1) failure to act claims under the APA).

To invoke § 706(1) and its ability to overcome § 2401(a), the Movants would need to have filed a complaint asserting a cause of action seeking relief under the APA, which they have not done. *See Wilderness Soc. v. Norton*, 434 F.3d 584, 588 (D.C. Cir. 2006) (where the D.C. Circuit observed, in the context of assessing the timeliness of an environmental group's APA action, that "this court repeatedly refused to hold that actions seeking relief under 5 U.S.C. § 706(1) to 'compel agency action unlawfully withheld or unreasonably delayed' are time-barred if initiated more than six years after an agency fails to meet a statutory deadline."). The Movants offer no case where § 706(1) has been invoked to overcome a statute of limitations where there is no underlying APA claim. The Movants contend in their Motion to Enforce that the Government's failure to properly follow the terms of the 1983 Stipulated Judgment with respect to tribal recognition has "unlawfully withheld or unreasonably delayed" the Government's mandated actions under the same Stipulated Judgment, but that is not the same thing as asserting a claim for failure to act under the APA.[14]

---

[14] The Government argues that even if the Movants were to state a § 706(1) claim in a separate complaint, it would fail: The Movants have not identified any statutory duty that BIA failed to

10

### 3. Other arguments regarding timeliness

The Movants raise other arguments in response to the Government's timeliness objection but none is convincing. They contend that this court retained jurisdiction over issues arising from the 1983 Stipulated Judgment. Mot. 20-21. But, setting aside that the individual movants were not parties to the *Watt* case and none of the Movants were members of the *Watt* classes, the court only retained jurisdiction for a period of one year after entry of the 1983 Stipulated Judgment. *See* Stip. J. ¶ 14. That window has closed.

Movants also assert that they have the right to "reopen" a dismissed suit under Rule 60(b)(6). Mot. 17-18. They cite *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994), for the rule that a party may reopen a dismissed suit under Rule 60(b)(6) if another party has breached the agreement at the heart of the suit. But again, the Movants are not part of the classes certified by *Watt*. They offer no case where a court has allowed petitioners who are not members of a class to enforce the terms of a class settlement.

Finally, Movants argue that their Motion is timely because their injury is "ongoing and irreparable" since the BIA's actions "resulted in a governance system that exacerbates" and "perpetuates" their injuries. Mot. 17. Even assuming that it was unlawful for the BIA to recognize the Tribe's constitution excluding Gloria Walker and her descendants, that is not enough to toll the statute of limitations. *Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007); *see also Alaska Cmty. Action on Toxics v. U.S. EPA*, 943 F. Supp. 2d 96, 105 (D.D.C. 2013) (finding agency actions that "have 'simply implemented' the decision made and spelled out long ago" do

---

perform. A "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 64 (2004). Statutory goals that are "'mandatory as to the object to be achieved' but leave the agency with 'discretion in deciding how to achieve' those goals are insufficient to support a 'failure to act' claim because such discretionary actions are not 'demanded by law.'" *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 803 (9th Cir. 2013) (quoting *SUWA*, 542 U.S. at 66). "[F]or a claim of unreasonable delay to survive, the agency must have a statutory duty in the first place[,]" *S.F. BayKeeper v. Whitman*, 297 F.3d 877, 885 (9th Cir. 2002), because an action brought under 5 U.S.C. § 706(1) is the equivalent of a claim for mandamus relief under 28 U.S.C. § 1361, *see SUWA*, at 63. The Ninth Circuit has held that a court's "ability to 'compel agency action' is carefully circumscribed to situations where an agency has ignored a specific legislative command." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010). Because the Movants have not asserted a separate § 706(1) claim, I need not address this argument further.

11

1  not restart the limitations period).

### B. Jurisdiction

Even if the Motion were timely, the Movants' request is outside of this court's jurisdiction. As the Ninth Circuit has observed in the context of similar litigation, "[t]he fact that *Watt* was a federal lawsuit does not establish jurisdiction over an action to enforce the terms of its settlement." *Alvarado*, 509 F.3d at 1017 (citing *O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995)). In general, "[e]nforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen*, 511 U.S. at 378, 114 S.Ct. 1673. The Movants invoke the doctrine of ancillary jurisdiction as well as Rule 60(b)(6) to show jurisdiction, but neither argument prevails.

#### 1. Ancillary Jurisdiction

The doctrine of ancillary jurisdiction provides an exception to the general rule that enforcement of a settlement agreement requires its own basis for jurisdiction. *Alvarado*, at 1017. "Federal courts have ancillary jurisdiction 'over some matters (otherwise beyond their competence) that are incidental to other matters properly before them.'" *Id.* (internal citation omitted). A court has ancillary jurisdiction to enforce a settlement agreement in a dismissed case "when the dismissal order incorporates the settlement terms, or the court has retained jurisdiction over the settlement contract." *Id*. In both situations, the party seeking enforcement of the settlement agreement must allege a violation of the settlement agreement in order to establish ancillary jurisdiction. *Id.* (citing *O'Connor*, 70 F.3d at 532).

The timeline for this court's ancillary jurisdiction has run. Under the 1983 Stipulated Judgment, this court retained jurisdiction over issues arising from its terms for a period of one year from entry of judgment, "or for such longer time as may be shown to be necessary on a motion duly noticed by any party within one year from entry of judgment." Stip. J. ¶ 14 (emphasis added). As was the case in *Alvarado*, "whatever ancillary jurisdiction the district court had expired on June 16, 1984." *Alvarado*, 509 F.3d at 1018.

And even if this court's ancillary jurisdiction had not expired forty-plus years ago, the

Movants do not purport to be part of either of the two *Watt* certified classes, meaning that even if this court did have ancillary jurisdiction to enforce the 1983 Stipulated Judgment, the Movants are not the right parties to seek that relief. The individual movants say they are the direct lineal descendants from Tribe member Gloria Walker. Mot. 7. Neither Gloria Walker nor her parents, Jessy Walker and Mamie Dick, were listed as distributees of the Table Mountain Rancheria or descendants of distributees, nor were they plaintiffs in the *Watt* suit. *Id.* 7, 9. Movants allege that Gloria Walker was a member of the TMRA (which was a plaintiff in *Watt* but not a member of the distributee classes) but they do not argue that Walker has a right to enforce the 1983 Stipulated Judgment on behalf of the TMRA, much less that the individual movants, as her purported descendants, would have inherited that right somehow. *See Cayuga Nation v. Tanner*, 824 F.3d 321, 328 (2d Cir. 2016) (stating that court only has jurisdiction if those who filed were authorized to do so under tribal law).

The Movants' arguments in favor of jurisdiction are not persuasive. They contend that the Government's failure to "conduct relations with a historically *bona fide* Indian tribal entity known as the Table Mountain Band of Indians as required by the Stipulated Judgment," is reviewable by this court because the "Stipulated Judgment incorporates these fundamental, constitutional mandates of Indian Affairs in Paragraph 4's directive that the 'Table Mountain Band of Indians' shall be listed in the Federal Register's list of tribes eligible for services from the federal government." Reply [Dkt. No. 20] 9; Stip. J. ¶ 4. They propose that "[l]ike the underlying legal order of the United States, the rules of tribal relations cannot be displaced by the terms of a contract, or in this case, by the terms of the Stipulated Judgment." Reply 12. Then they invoke Rule 60(b)(6), (which allows a district court to relieve a party "from a final judgment, order, or proceeding for . . . any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6)), and argue that "while the Motion involves a claim for failure to comply with the Stipulated Judgment," (which they at least momentarily concede would *not* fall within this court's jurisdiction), "federal law and the U.S. Constitution provide a basis for federal-court jurisdiction over the dispute about the Government's compliance with the judgment." Reply 13.

I understand the Movants to be arguing that "[b]ecause there is a Constitutional duty in

13

1  question," (meaning the Government's duty to conduct relations with what the Movants refer to as
2  the "historic tribe"), and "because that duty impacts the interpretation of the Government's
3  effectiveness of implementing the Stipulated Judgment," then "this Court possesses ancillary
4  jurisdiction 'to vindicate its authority and effectuate its decrees.'" Reply 13 (citing *Peacock v.*
5  *Thomas*, 516 U.S. 349, 356 (1949)). As I have explained, the Movants offer no authority to
6  support that they, as non-parties to a four-decades old Stipulated Judgment, can ask this court to
7  enforce that judgment's terms.

### 2. Rule 60(b)(6)

The Movants' argument that this court has jurisdiction under Fed. R. Civ. P. 60(b)(6) also comes up short. The Movants do not seek to be relieved from a final judgment, they seek to *enforce* a judgment (to which they are not parties) on the basis that the BIA did not comply with it. Courts sometimes allow vacation of an order dismissing a case where the defendant breached a settlement agreement that led to dismissal. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (citing cases). But that is not what the Movants seek here.

Even if Rule 60(b)(6) *did* apply, a motion under Rule 60(b)(6) must be brought "within a reasonable time." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (citation omitted). What qualifies as a "reasonable time" is a fact-intensive inquiry. *See Hall v. Haws*, 861 F.3d 977, 987–88 (9th Cir. 2017) (citing *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009)). To determine whether the Rule 60(b)(6) motion was filed within a reasonable time, the court may consider if the government was prejudiced by the delay and if the movant had a good reason for not acting sooner. *Yeshiwas v. U.S. Citizenship & Immigr. Servs.*, No. C 12-1719 PJH, 2014 WL 31455, at *1 (N.D. Cal. Jan. 3, 2014) (citing *In re Pac. Far E. Lines, Inc.*, 889 F.2d 242, 249 (9th Cir. 1989)).

The Movants have not shown that they brought this motion within a "reasonable time." They argue that "what is reasonable depends on the circumstances[,]" and that the United States' intervening changes in "policy and practice related to participation in restoration of terminated tribal governments" justifies their delay. Mot. 21. But the Stipulated Judgment was entered in 1983 and the BIA notice that recognized the Table Mountain Rancheria as a federally listed tribe

14

1  rather than the Table Mountain Band of Indians was also issued in 1983. The Movants offer no
2  credible explanation for why they waited so long to file this motion.

3  The Movants have not demonstrated that "extraordinary circumstances" justify relief. In
4  cases involving Rule 60(b)(6), "it is appropriate to consider the risk of injustice to the particular
5  parties, the risk that the denial of relief will produce injustice in other cases, and the risk of
6  undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs.*
7  *Acquisition Corp.*, 486 U.S. 847, 848–49 (1988). "To justify relief under subsection (6), a party
8  must show 'extraordinary circumstances' suggesting that the party is faultless in the delay."
9  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). The Ninth
10 Circuit has held that Rule 60(b)(6) is only relevant "where extraordinary circumstances prevented
11 a party from taking timely action to prevent or correct an erroneous judgment." *United States v.*
12 *Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).

13 The Movants have not shown such extraordinary circumstances here; they only point to the
14 gravity of the constitutional issues at play to argue that they have. While I do not disagree that the
15 issues are important, their importance alone does not justify a delay of decades.[15] Moreover, the
16 risk of prejudice to the Government arising from the forty-odd year delay is significant. Since the
17 case has been closed for over forty years, records and evidence are harder to find and people who
18 have knowledge about the issues at hand no longer work for the BIA. The court's files for this
19 case no longer exist—a PDF document of the docket for this case had to be attached to the
20 Government's response so that this court might understand the nature of the *Watt* proceeding. *See*
21 Response, Exs. A-B.

22 The Movants respond that the Government is not prejudiced by the court's consideration of

---

[15] The Movants point out that this court assumed jurisdiction over a motion to enforce a 1980 Stipulated Judgment by the Buena Vista Rancheria in 2020 in *Hardwick v. United States*, No. 79-cv-01710-EMC, 2020 WL 6700466, at *1 (N.D. Cal. Nov. 13, 2020). That was a motion to enforce, not a Rule 60(b)(6) motion, so it is inapposite for determining whether extraordinary circumstances exist. There, the plaintiffs requested that the BIA take the Buena Vista Rancheria into trust pursuant to mandatory trust acquisition procedures laid out by the 1980 *Hardwick* stipulated judgment. Judge Chen assumed jurisdiction for several reasons that find no analog in this case, including that the movants challenged a recent agency action and the Buena Vista Rancheria was a party to the 1980 *Hardwick* Stipulated Judgment.

15

1  the motion "given the core constitutionally justiciable questions raised," and because the Movants
2  have "consistently formally and informally sought participation for the last 40 years to work
3  within the distributee-centered tribal government structure that BIA accepts as the Table Mountain
4  Rancheria." Reply 16-17.  But the import of the Movants' questions does not mitigate the
5  prejudice the Government would face were I to order it to show cause or enforce the 1983
6  Stipulated Judgment against it.

## CONCLUSION

The Motion is untimely.  If it were not, this court would not have jurisdiction to grant the relief that the Movants seek.  The Motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 23, 2025



William H. Orrick
United States District Judge